1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9           FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   ROBERT EUGENE ROJAS,                    No.  2:22-cv-1105 KJM AC P
12               Plaintiff,
13        v.                                  ORDER
14   COUNTY OF SACRAMENTO,
15               Defendant.
16

17        Plaintiff, a former pretrial detainee proceeding pro se, seeks relief pursuant to 42 U.S.C.

18   § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and Section

19   504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and has requested leave to

20   proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

21        I.       Application to Proceed In Forma Pauperis

22        Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C.

23   § 1915(a).  ECF No. 2.  Accordingly, the request to proceed in forma pauperis will be granted.

24        II.      Statutory Screening of Prisoner Complaints

25        The court is required to screen complaints brought by prisoners[1] seeking relief against "a

26   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).

27   _____

28   [1]  Plaintiff was incarcerated at the time he filed the complaint, though it appears from the docket
     that he has since been released from custody.

1

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

1  misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this

2  standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg.

3  Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the

4  pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor,

5  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).  "However, a liberal

6  interpretation of a pro se civil rights complaint may not supply essential elements of the claim

7  that were not initially pled." Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014) (citation

8  omitted).

9      III.    Complaint Summary

10         Plaintiff alleges that defendant Sacramento County violated his First, Fifth, Sixth, and

11  Fourteenth Amendment rights, as well as his rights under the ADA and RA, while he was a

12  pretrial detainee.  ECF No. 1.  The complaint, which spans nearly forty pages,[2] predominately

13  alleges unconstitutional conditions of confinement and deficient psychiatric care, but also

14  includes allegations of deficient medical care; denial of the right to practice his religion;

15  interference with his access to the courts, counsel, and mail; retaliation; excessive force; sexual

16  harassment; unconstitutional disciplinary proceedings; theft of property and excessive

17  commissary prices; and violations of the ADA and RA.  Id.

18      IV.    Legal Standard for County Liability

19         "[M]unicipalities and other local government units . . . [are] among those persons to

20  whom § 1983 applies." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  In order to

21  establish municipal liability, plaintiff must allege facts showing that "(1) [he] had a constitutional

22  right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to

23  deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind

24  the constitutional violation.'" Gordon v. County of Orange (Gordon II), 6 F.4th 961, 973 (9th

25  _____

26  [2]  The court notes that plaintiff has also filed over 1600 pages of exhibits (ECF Nos. 5-7, 10),
    which will not be considered as part of the screening process.  It is not the court's responsibility

27  to sift through plaintiff's exhibits to attempt to decipher what specific claims he may be
    attempting to make against defendant, and analysis of plaintiff's claims will be based only on the

28  allegations contained within the complaint itself.

1    Cir. 2021) (quoting <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011)).  There must

2    be "a direct causal link between municipal policy or custom and the alleged constitutional

3    deprivation."  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).  "[A] municipality cannot be

4    held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be

5    held liable under § 1983 on a *respondeat superior* theory."  <u>Monell</u>, 436 U.S. at 691.

6         Plaintiff can establish liability where the county acted in accordance with "an expressly

7    adopted official policy" or (2) a "longstanding practice or custom."  <u>Gordon II</u>, 6 F.4th at 973

8    (quoting <u>Thomas v. County of Riverside</u>, 763 F.3d 1167, 1170 (9th Cir. 2014)).  The county may

9    also be liable when the violation was committed by "an official with final policy-making

10   authority or such an official ratified a subordinate's unconstitutional decision or action and the

11   basis for it."  <u>Id.</u> at 974 (internal quotation marks omitted) (quoting <u>Clouthier v. County of Contra</u>

12   <u>Costa</u>, 591 F.3d 1232, 1250 (9th Cir. 2010)).  "Proof of random acts or isolated events is

13   insufficient to establish custom," <u>Navarro v. Block</u>, 72 F.3d 712, 714 (9th Cir. 1995) (citations

14   omitted), but it may be shown by "repeated constitutional violations for which the errant

15   municipal officials were not discharged or reprimanded," <u>Gillette v. Delmore</u>, 979 F.2d 1342,

16   1349 (9th Cir. 1992).

17        V.      <u>Claim for Which a Response is Required</u>

18        Plaintiff alleges the County maintains constitutionally deficient jail conditions and mental

19   health treatment practices, which violated his Fourteenth Amendment rights.  ECF No. 1.  For the

20   entirety of his incarceration plaintiff, who suffers from serious mental illness, was designated

21   "total separation" and housed in solitary confinement where he was confined to his cell for over

22   twenty-three hours per day and regularly deprived of "human contact, programming, fresh air,

23   and sunlight."  <u>Id.</u> at 1, 13, 15, 21.  While in solitary confinement, plaintiff was further subjected

24   to unsanitary conditions such as rodent and insect infestations, other inmates flooding the pod

25   with toilet water containing urine and feces, inadequate cleaning and sanitization, and bedding

26   which was "contaminated with bodily fluids, bacteria, and fungi."  <u>Id.</u> at 4-5.  When plaintiff

27   attempted to commit suicide or expressed suicidal ideation, he was placed in "an extremely harsh

28   form of psychiatric solitary confinement" further removing him from the little human contact he

1   would otherwise have and completely removing his ability to access sunlight, fresh air, and

2   shower, among other things.  Id. at 15, 25.  The psychiatric solitary confinement cells were

3   similarly "covered in feces, urine, blood and other dangerous bodily fluids."  Id. at 27.  These

4   conditions, coupled with a failure to provide mental health treatment, exacerbated plaintiff's

5   existing mental illness and "he has suffered worsening depression, extreme grief, extreme

6   anxiety, suicidal thoughts, attempted suicide, and engaged in self-mutilation countless times."  Id.

7   at 2, 13.

8          Plaintiff further alleges that defendant "has been aware of the constitutionally and legally

9   inadequate care and conditions in its jails for years" based on various reports both commissioned

10  by defendant and from outside organizations.  Id. at 9-12, 24.  Multiple reports have found the

11  jail's conditions that plaintiff complains of, including the excessive use of segregation for

12  mentally ill inmates, to be "inhumane, excessively punitive," and "unlikely to meet constitutional

13  standards."  Id. at 9-10.  The conditions were found to be especially dangerous for persons with

14  mental health conditions and likely to cause further decompensation and self-harm, with the

15  suicide prevention policies labeled as "punitive and anti-therapeutic."  Id. at 10-11, 27-28.

16         These allegations are sufficient to state claims for unconstitutional conditions of

17  confinement and inadequate psychiatric care in violation of the Fourteenth Amendment and

18  defendant will be required to respond.  See Demery v. Arpaio, 378 F.3d 1020, 1024 (9th Cir.

19  2004) ("The Fourteenth Amendment prohibits punishment of pretrial detainees."  (citing Bell v.

20  Wolfish, 441 U.S. 520, 535 (1979))); Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir.

21  1995) ("subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an

22  infliction of pain within the meaning of the Eighth Amendment" (citations omitted)); Doty v.

23  County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) ("[T]he requirements for mental health care

24  are the same as those for physical health care needs." (citations omitted)).

25  VI.     Failure to State a Claim

26         A.  Medical Care

27         Plaintiff alleges that defendant "does not timely or adequately respond to requests for

28  medical care, and denies or delays [chronic and specialty care] for excessive periods of time."  Id.

5

at 2.  This resulted in diminishing eyesight that could have been prevented, worsening of plaintiff's COPD (chronic obstructive pulmonary disorder), and needless pain.  Id.  Plaintiff was also denied access to a "lower-tier, lower-bunk chrono, pain medication, and neurological ointment," nebulizer breathing treatments, various asthma and allergy medications, and regular visits with a specialist for his COPD.  Id. at 14.  Defendant has known about the constitutionally inadequate care for years because of "[r]eports from multiple outside agencies and consultants [which] have repeatedly documented . . . major deficiencies in health care."  Id. at 9.

Even assuming that plaintiff was subject to unconstitutional medical care, he fails to state a claim for relief against the only named defendant because he has not shown that the deficient care resulted from a policy or practice within the jail.  Although he alleges that defendant was aware of major deficiencies in the provision of health care, he does not identify those deficiencies such that the alleged inadequacies in his care can be attributed to some policy or practice of the County as opposed to the decision of an individual medical provider.

To the extent plaintiff may be attempting to allege deliberate indifference against an individual defendant, he similarly fails to do so.  "Liability under § 1983 must be based on the personal involvement of the defendant," Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).  Because the complaint does not name any particular defendant who made a decision regarding plaintiff's care, he cannot establish an individual was deliberately indifferent to his medical needs.  If plaintiff chooses to amend his complaint to add an individual defendant, he must allege facts showing

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon v. County of Orange (Gordon I), 888 F.3d 1118, 1125 (9th Cir. 2018).

1           B.  Religion

2           The complaint also alleges that plaintiff has been denied the ability to practice his religion

3   in violation of the First Amendment.  ECF No. 1 at 3.  Specifically, plaintiff claims that he is not

4   allowed access to Jewish religious services or the ability to speak to a Rabbi, receive a kosher

5   diet, or access religious reading material.  Id. at 3.

6           To establish a free exercise violation, plaintiff must show defendant burdened the practice

7   of his religion, without justification reasonably related to legitimate penological interests, by

8   preventing him from engaging in conduct that is (1) based on a "sincerely held" religious concern

9   and (2) "rooted in religious belief" rather than in secular philosophical concerns.  Shakur v.

10  Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted).  While the blanket denial of

11  plaintiff's ability to practice his religion demonstrates that he was subject to a substantial burden

12  to his religious practice without a valid penological purpose, he does not allege facts showing that

13  denial was the result of the County's policies or customs and he therefore fails to state a claim

14  against defendant.

15          C.  Access to the Courts and Mail

16          Plaintiff alleges that he is denied access to legal services and the law library, that legal

17  mail is not properly tracked or timely processed, responses to legal research requests are delayed

18  and inadequate, and he is not afforded the ability to conduct confidential legal calls.  ECF No. 1 at

19  3-4.  He also asserts that both his legal and non-legal mail are tampered with, delayed by two to

20  three months, and opened and read outside his presence.  ECF No. 1 at 4-5.

21          The constitutional right of access to courts "is ancillary to the underlying claim, without

22  which a plaintiff cannot have suffered injury by being shut out of court."  Christopher v. Harbury,

23  536 U.S. 403, 415 (2002); see also Lewis v. Casey, 518 U.S. 343, 349 (1996) (access to courts

24  claim requires plaintiff to show that the defendant's conduct caused "actual injury").  To state a

25  claim for deprivation of the right of access to courts, a plaintiff must show: (1) the loss of a

26  "nonfrivolous" claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be

27  awarded as recompense but that is not otherwise available in a future suit.  Christopher, 536 U.S.

28  at 415.

Plaintiff fails to state an access to the courts claim because he fails identify any actual injury as a result of the alleged interference.  At most, he alleges is that his criminal proceedings "have been stalled and delayed," but provides no clarification as to what that entails.  See ECF No. 1 at 13.  Furthermore, the only defendant in this case is Sacramento County, which means plaintiff must allege facts showing that any suffered harm resulted from the defendant's policy or custom, which he has not done.

With respect to plaintiff's mail, prisoners "enjoy[] a First Amendment right to send and receive mail."  Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  Moreover, "prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence," though the same protection does not apply to non-legal mail.  Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017).  Legal mail entitled to First Amendment protection is narrowly defined as confidential correspondence between a prisoner and his attorney.  See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 2014) ("Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail.").  In criminal cases, such correspondence is also protected by the Sixth Amendment.  Mangiaracina v. Penzone, 849 F.3d 1191, 1196 (9th Cir. 2017).

It is unclear whether any of plaintiff's legal mail would be protected under the Sixth Amendment, as he indicates that he is representing himself in his criminal case.  ECF No. 1 at 3.  However, even if plaintiff's mail is entitled to protection under both the First and Sixth Amendments, the only defendant in this case is Sacramento County.  Therefore, to state a claim, plaintiff must show that a jail policy, practice, or custom caused the violation of his rights, as opposed to the independent conduct of the officers involved.  Navarro, 72 F.3d at 714 ("Proof of random acts or isolated events is insufficient to establish custom." (citation omitted)).  While plaintiff may have stated violations based upon the opening and reading his legal mail outside his presence and the excessive delays in processing his mail, he does not allege facts showing the County's policies caused the violation.  Nor does he allege facts indicating such treatment is so regular it constitutes a custom as opposed to an isolated occurrence.

////

8

For these reasons, plaintiff fails to state a claim for relief based on interference with his access to the courts or tampering with his legal and non-legal mail.

D. Retaliation

The complaint alleges that plaintiff was subject to harassment and hazing in retaliation for submitting grievances. ECF No. 1 at 7-9.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

Although plaintiff alleges that he was subject to adverse conduct because he filed grievances, he provides no facts demonstrating that the grievances were what motivated officers to harass him. Further, aside from alleging that his mail was tampered with, plaintiff provides no other facts describing the retaliatory harassment he experienced. Finally, even if plaintiff had sufficiently alleged facts showing he was subjected to retaliation, he has not alleged facts showing that defendant's policies or customs were the cause of the retaliatory conduct.

E. Grievance Process

Plaintiff alleges the defendant "operates an inadequate grievance process" because grievance forms and drop boxes are not easily accessible. ECF No. 1 at 8. However, this claim necessarily fails "because inmates lack a separate constitutional entitlement to a specific grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

F. Disciplinary Measures

Plaintiff alleges that defendant's disciplinary process violates his right to due process and imposes excessive punishment for violations. ECF No. 1 at 5-6. Specifically, he alleges that he is not provided with enough time to prepare or present a defense, he is not allowed to call or question witnesses or to present or review evidence, he is not provided a staff assistant, and guilt is often predetermined. Id. at 5-7. Further, punishments are imposed without consideration of

9

mental health factors and in consecutive periods for each individual rule violation resulting in excessive punishments.  Id. at 6.

"[P]retrial detainees may be subjected to disciplinary [sanctions] only with a due process hearing to determine whether they have in fact violated any rule."  Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996).  In these instances, pretrial detainees are entitled to the due process protections outlined in Wolff v. McDonnell, 418 U.S. 539 (1974).  Mitchell, 75 F.3d at 525.  This process includes (1) twenty-four-hour advanced written notice of the charges against him, Wolff, 418 U.S. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," id. at 564 (internal quotation marks and citation omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71.

The complaint's general allegations of insufficient process do not state a claim for relief and plaintiff does not identify any specific instances where he was denied due process or provide facts showing the denial was the result of a jail policy, practice, or custom.  Though plaintiff alleges that he is not provided sufficient time to prepare a defense, he does not allege that he is provided less than twenty-four hours written notice of the charges, and while he alleges that he is denied staff assistance which he requires due to his mental health conditions, he does not allege that he is illiterate or that he has been denied assistance in complex matters.  With respect to the denial of the ability to present witnesses and evidence, there are no facts regarding the witnesses and evidence he was not permitted to present nor is there any indication the denial was the result of a jail policy rather than the individual determination of the officer in charge of his disciplinary proceedings.  Plaintiff also fails to allege any specific instances where his factfinder was not impartial.  Finally, plaintiff does not provide any information regarding the nature of his rule violations or the specific punishments he received as a result to demonstrate that his punishment was excessive.

////

10

G. Excessive Force

Plaintiff claims that he has been subjected to excessive force on multiple occasions, including instances where he was placed in a "wrap device" despite not being suicidal.  ECF No. 1 at 14, 29.  He alleges that on at least one occasion, correctional staff sliced into his skin while cutting off his clothing to place him in a wrap while slamming his face into the ground and threatening to break his arms and stab him with a pocketknife.  Id. at 29.

While plaintiff's allegations are sufficient to establish that he was subject to excessive force, see Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015) ("a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable"), he does not name any individual defendant who could be liable.  The complaint is devoid of facts showing that the County's policies or customs caused the use of force, and plaintiff therefore fails to state a claim against defendant.

H. Property Theft

Plaintiff asserts that his property has been destroyed, disposed of, and given away to other inmates.  ECF No. 1 at 14.  However, the unauthorized deprivation of property by a prison official, whether intentional or negligent, does not state a claim under § 1983 if the state provides an adequate post-deprivation remedy, Hudson v. Palmer, 468 U.S. 517, 533 (1984), and "California Law provides an adequate post-deprivation remedy for any property deprivations," Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810-895).  Therefore, this claim necessarily fails.

I. Sexual Harassment

Plaintiff claims that he has been repeatedly subjected to verbal sexual misconduct and harassment, specifically by one member of correctional staff who was "repeatedly asking plaintiff w[h]ether or not he is bisexual, asking to 'deep throat all 12 inches' of his 'cock' and to 'massage' his 'balls' while defendant does it."  ECF No. 1 at 36.

Verbal sexual harassment may violate a pretrial detainee's Fourteenth Amendment rights. See Vasquez v. Cnty. of Kern, 949 F.3d 1153, 1163-65 & n.10 (9th Cir. 2020) (finding verbal sexual harassment of adolescent ward in juvenile court violated Fourteenth Amendment and

11

1   noting that "PREA defines 'sexual harassment' as '[r]epeated verbal comments . . . of a sexual

2   nature . . . including obscene language." (quoting 28 C.F.R. § 115.6)).  "The threshold question is

3   whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly

4   be said to shock the contemporary conscience."  Id. at 1162 (citation and internal quotation marks

5   omitted).

6        Plaintiff alleges facts sufficient to "shock the contemporary conscious" regarding the

7   repeated verbal sexual harassment to which he was subjected.  However, he does not allege facts

8   showing that a policy or custom caused this sexual harassment, or that defendant in some way

9   ratified the officer's conduct.  Instead, he appears to allege that the sexual harassment was carried

10  out by a single officer, which does not state a claim against the County because "a municipality

11  cannot be held liable *solely* because it employs a tortfeasor."  Monell, 436 U.S. at 691.  The

12  complaint does not identify or name as a defendant the officer who committed the alleged sexual

13  harassment.

14        J.   Commissary

15        Plaintiff claims the jail's commissary provides inadequate service, including items that are

16  of substandard quality and not the same as advertised, excessive and overly burdensome pricing

17  compared to other penal institutions, a delivery process that does not allow inspection of items

18  prior to acceptance, and an inability to raise discrepancies without forfeiting the entire order.

19  ECF No. 1 at 7-8.  These allegations fail to state a cognizable claim "because there is no

20  constitutional right to purchase prison canteen products."  See Merrick v. Shinn, 846 F. App'x

21  573, 574 (9th Cir. 2021) (citing Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)) (holding

22  district court properly dismissed claim based on inability to purchase items and prison store

23  prices).

24        K.   ADA & RA

25        Plaintiff alleges that he is disabled within the meaning of the ADA and RA.  ECF No. 1 at

26  15.  Though he does not identify the disabilities that qualify him for protection, he states he

27  suffers from various conditions including limited vision, chronic back pain, nerve damage, severe

28  asthma, COPD, and metabolic deficiency and implies that he may also suffer from hearing loss.

Id. at 2, 13.  He further alleges that the jail is full of physical obstacles that prevent him from bathing, moving around the housing unit, using a payphone, or visiting with attorneys due to mobility disabilities and that he has been denied various accommodations such as a "lower tier/lower bunk chrono, transitional eyeglasses, chrono not to force plaintiff to wake up at very early times for count time, hearing aids, payphones with a full receiver with chairs to sit on, ethnic hiegenic [sic] products, and other items he needs to perform everyday activities."  Id. at 2-3.

> To state a claim under Title II of the ADA, a plaintiff must allege that:
>
>> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).  While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act" resulting int the same analysis being applied to claims brought under both statutes," Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

Although plaintiff alleges that he suffers from various medical conditions, there are no facts demonstrating that any of his conditions rise to the level of a disability within the meaning of the ADA or RA.  Similarly, though he identifies various accommodations he was denied, he fails to allege facts showing which disabilities they were needed to accommodate, that they were denied because of his disability, or that their denial as an accommodation made some service, program, or activity unavailable to him.  For these reasons, plaintiff fails to state a claim for relief under either the ADA or RA.

////

1    VII.    Leave to Amend

2           For the reasons set forth above, the court finds that the complaint states cognizable claims

3    based on plaintiff's conditions of confinement and the inadequate provision of mental health care.

4    No other claims are cognizable.  Plaintiff may proceed forthwith to serve defendant on his

5    Fourteenth Amendment conditions of confinement and deliberate indifference to mental health

6    claims, or he may delay serving any defendant and amend the complaint.

7           Plaintiff will be required to complete and return the attached notice advising the court how

8    he wishes to proceed.  If plaintiff chooses to amend the complaint, he will be given thirty days to

9    file an amended complaint.  If plaintiff elects to proceed on his claims for unconstitutional

10   conditions of confinement and inadequate mental health care without amending the complaint, the

11   court will proceed to order service of the complaint.  A decision to go forward without amending

12   the complaint will be considered a voluntarily dismissal without prejudice of all other claims.

13          If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

14   about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode,

15   423 U.S. 362, 370-71 (1976).  The complaint must also allege in specific terms how each named

16   defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

17   There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

18   connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy,

19   588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

20   participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266,

21   268 (9th Cir. 1982) (citations omitted).

22          If plaintiff decides to amend the complaint, particularly if he intends to include additional

23   defendants, he is advised that he may join (include in a single complaint) multiple claims if they

24   are all against a single defendant, Fed. R. Civ. P. 18(a), and joinder of defendants is only

25   permitted if "any right to relief is asserted against them . . . with respect to or arising out of the

26   same transaction, occurrence, or series of transactions or occurrences; and any question of law or

27   fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2).  In other words,

28   joining more than one claim is only proper when it is against one defendant, and joining multiple

                                                    14

defendants in one complaint is only proper when the claims against them are based on the same facts.  Plaintiff is further advised that, he should be mindful Rule 8's short and plain statement requirement and that a complaint that exceeds twenty-five pages is likely to violate that requirement.  Fed. R. Civ. Proc. 8(a)(2).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal).  Once plaintiff files an amended complaint, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

An amended complaint must not consist of a lengthy narrative, but should identify each separate claim by heading and number and set forth under each heading the facts intended to support that claim.  "Shotgun" or "kitchen sink" complaints, such as original complaint, are strongly disfavored and are likely to result in dismissal under Rule 8(a)(2).  "The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support . . . .  It is the plaintiff['s] burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them."  Gurman v. Metro Hous. & Redev. Auth., 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

VIII.   Plain Language Summary of this Order for a Pro Se Litigant

Your request to proceed in forma pauperis is granted.

Some of the allegations in the complaint state claims against defendant and some do not. Your claims based on unconstitutional conditions of confinement and inadequate mental health

15

care state claims for relief.  All other claims do not.  Although some of your allegations demonstrate a violation of your constitutional rights, you have not alleged facts showing that those violations were due to defendant's policies or customs.  To the extent you may be trying to make claims against individuals, you have not identified any individuals as defendants.

You have a choice to make.  You may either (1) proceed immediately on your conditions of confinement and mental health care claims and voluntarily dismiss all other claims or (2) try to amend the complaint.  If you want to go forward without amending the complaint, you will be voluntarily dismissing without prejudice all of your claims except for the unconstitutional conditions of confinement and inadequate mental health care claims.  If you choose to file a first amended complaint, it must include all claims you want to bring.  Once an amended complaint is filed, the court will not look at any information in the original complaint.  **Any claims and information not in the first amended complaint will not be considered.**  You must complete the attached notification showing what you want to do and return it to the court.  Once the court receives the notice, it will issue an order telling you what you need to do next (i.e., file an amended complaint or complete service paperwork).

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2.  Plaintiff has stated Fourteenth Amendment claims for relief based on conditions of confinement and inadequate mental health care.  No other claims are cognizable.

3.  Plaintiff has the option to proceed immediately on his cognizable claims as set forth in Section V above, or to amend the complaint.

4.  Within fourteen days of service of this order, plaintiff shall complete and return the attached form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file a first amended complaint.  If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend

////

////

////

1    dismissal without prejudice of all claims except for his Fourteenth Amendment claims based on

2    conditions of confinement and inadequate mental health care.

3    DATED: July 20, 2023

4

5    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ROBERT EUGENE ROJAS,                    No.  2:22-cv-1105 KJM AC P

12              Plaintiff,

13         v.                                 NOTICE OF ELECTION

14    COUNTY OF SACRAMENTO,

15              Defendant.

16

17        Check one:

18    _____  Plaintiff wants to proceed immediately on his Fourteenth Amendment claims based on

19        conditions of confinement and inadequate mental health care against defendant

20        Sacramento County without amending the complaint.  Plaintiff understands that by going

21        forward without amending the complaint he is voluntarily dismissing without prejudice all

22        other claims pursuant to Federal Rule of Civil Procedure 41(a).

23

24    _____  Plaintiff wants to amend the complaint.

25

26    DATED:_____

27                                        _____
                                         Robert Eugene Rojas
28                                         Plaintiff pro se

                                  1